IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILLIP DEITRICH,

        Plaintiff,

v.                           C.A. No. 14-773-LPS

CARL DANBERG, in his individual
capacity; and JANET DURKEE, in her
individual capacity,

        Defendants.

## MEMORANDUM ORDER

Pending before the Court is Defendant Carl Danberg ("Danberg")[1] and Defendant Janet Durkee's ("Durkee")[2] (together, "Defendants") motion to dismiss Plaintiff Phillip Deitrich's ("Deitrich") complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.I. 11) For the reasons stated below, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss (D.I. 11) is **GRANTED**.

    1.    Deitrich is a former employee of the Delaware Department of Correction ("DOC"). (*See* D.I. 1 ¶ 12) At the time of his termination, Deitrich was a Senior Correctional Counselor at the James T. Vaughn Correctional Center ("JTVCC"). (*See id.* ¶ 14) In that role, Deitrich was required to interview inmates, write inmate classification reports, process phone sheets, manage a peer education and AIDS awareness program, and facilitate the rehabilitation of

---

[1] At the time relevant to the complaint, Danberg served as the Commissioner of the Delaware Department of Correction ("DOC"). (*See* D.I. 1 ¶ 7; D.I. 12 at 1)

[2] At the time relevant to the complaint, Durkee served as the DOC Director of Human Resources and Development. (*See* D.I. 1 ¶ 8; D.I. 12 at 1)

1

inmates. (*See id.* ¶ 15) (describing Deitrich's job "duties") In order to perform those duties, Deitrich was trained in, given access to, and used the Delaware database of confidential "Criminal Justice Information" commonly referred to as DELJIS. (*See id.* ¶¶ 13, 16-19 (describing various ways Deitrich used DELJIS to perform job duties); D.I. 12 at 4 n.3)

2. In April 2012, DOC opened an investigation into Deitrich's use of the DELJIS system. (*See* D.I. 1 ¶ 20) On April 16, 2012, Deitrich was informed by email that he and two others[3] would be interviewed by DELJIS Information Systems Auditor Ray Sammons ("Sammons") the following week. (*See id.* ¶¶ 9, 20) One week later, Sammons interviewed Deitrich "regarding a Ms. Charlotte Morris." (*Id.* ¶ 21) Approximately three weeks after the interview, Sammons emailed Deitrich and three others,[4] informing them that a second interview would take place the following day. (*See id.* ¶ 24) The next day, Sammons interviewed Deitrich for a second time.[5] (*See id.* ¶ 25) While the DOC investigation was pending, Deitrich's DELJIS access was suspended. (*See id.* ¶ 22)

3. On May 24, 2012, Deitrich received written notice that his DELJIS access was permanently suspended.[6] (*See id.* ¶ 27) Deitrich immediately contacted his union president,[7]

---

[3]The two other individuals were Linda Kemp ("Kemp") and Megan Marriner ("Marriner"). (*See* D.I. 1 ¶ 20)

[4]The three other individuals were Kemp, Marriner, and Sarah Schrader ("Schrader"). (*See id.* ¶ 24)

[5]This was a group interview of Deitrich, Marriner, and Schrader. (*See id.* ¶ 25)

[6]Deitrich learned that Marriner and Schrader had also received permanent suspensions from DELJIS. (*See* D.I. 1 ¶ 27)

[7]Deitrich was a member of the American Federation of State, County and Municipal Employees ("AFSCME"), ALF-CIO, Council 81, Local 247. (*See id.* ¶¶ 28, 46)

Karl Hazzard ("Hazzard"), who instituted an appeal of Deitrich's DELJIS suspension. (*See id.* ¶¶ 28-29) On June 20, 2012, the DELJIS Board of Managers ("Board") held a hearing on Deitrich's appeal and upheld his permanent suspension from DELJIS.[8] (*See id.* ¶ 30) Deitrich requested the reasons for the Board's decision but was not provided with any explanation, nor was he given access to the Board's evidence or Sammons' report. (*See id.*) On July 3, 2012, Deitrich received an email confirming his permanent suspension from DELJIS. (*See id.* ¶ 31)

4. Three days later, then-JTVCC Warden Perry Phelps ("Phelps") met with Deitrich and Hazzard. (*See id.* ¶ 32) During the meeting, Phelps informed Deitrich that he was being removed from the workplace with pay, pending a DOC investigation into his conduct pursuant to Policy 9.22.[9] (*See id.*) Deitrich "was given a copy of the Memorandum removing him from the workplace." (*See id.*) Four days later, DOC investigator Ronald Hosterman conducted an in-person "210 investigation" into Deitrich's conduct.[10] (*See id.* ¶ 33) Three days later, on July 13, 2012, Phelps met with Deitrich and Hazzard for a second time. (*See id.* ¶ 34) Phelps informed Deitrich that he was now suspended from the workplace without pay, pending termination. (*See id.*) Deitrich was not given the reason for this decision or a copy of the 210 investigation findings. (*See id.*)

5. Following the July 13 meeting with Phelps, Hazzard scheduled a meeting with

---

[8]The hearing also concerned Marriner's and Schrader's permanent suspensions. (*See id.* ¶ 30) The Board overturned Marriner's permanent suspension and upheld Schrader's. (*See id.*)

[9]Policy 9.22 is entitled "Removal from the Workplace" and "comes into effect when an employee poses an alleged immediate safety/security risk or jeopardizes the public's confidence." (*Id.* ¶ 32)

[10]Hazzard was present during Hosterman's investigation. (*See id.* ¶ 33)

3

Durkee and Danberg about Deitrich's suspension. (*See id.* ¶ 35) The day before the meeting, Deitrich received a letter from Durkee informing him that he was being considered for dismissal based on the results of the DOC investigation. (*See id.* ¶ 36; *see also* D.I. 12 Ex. B ("Pre-Termination Letter"))[11] The letter explained Deitrich faced dismissal based on his "inappropriate and unauthorized use of the Delaware Criminal Justice Information System (DELJIS) for non-work related purposes." (Pre-Termination Letter; *see also* D.I. 1 ¶ 36) The letter further informed Deitrich that his DELJIS access had been permanently suspended "due to a substantiated DELJIS violation." (Pre-Termination Letter; *see also* D.I. 1 ¶ 36) On July 24, 2012, Deitrich, Hazzard, and Deitrich's union representative met with Danberg and Durkee for a "Pre-Decision Meeting." (*See* Pre-Termination Letter; D.I. 1 ¶ 37) During the Pre-Decision Meeting, Deitrich was given an opportunity to explain why he should not be terminated. (*See* D.I. 1 ¶ 37) Deitrich took advantage of that opportunity and pleaded his case "as best as he could." (*See id.*) On August 7, 2012, Deitrich called his union representative about the Pre-Decision Meeting and learned he had been terminated, effective August 6, 2012. (*See id.* ¶ 38)

6. On June 18, 2014, Deitrich filed a complaint against various DELJIS officials[12]

---

[11]The Pre-Termination Letter is both "integral to" and "explicitly relied upon in the complaint" and thus can be considered without converting the motion to dismiss into a motion for summary judgment. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[12]The Complaint initially named Peggy Bell, Earl McCloskey, Michael McDonald, Matthew Jamison, and Ray Sammons (together, the "DELJIS Defendants") as defendants, along with Danberg and Durkee. (*See* D.I. 1) On July 22, 2014, all of the originally named defendants moved to dismiss Deitrich's claims. (*See* D.I. 5) The Court subsequently stayed proceedings to allow the Board to provide Deitrich with a re-hearing on the revocation of his DELJIS access. (*See* D.I. 6) The Court also denied defendants' motion to dismiss without prejudice to renew if and when the stay was lifted. (*See* D.I. 8) On October 27, 2014, the Board provided Deitrich with a re-hearing regarding his DELJIS access and again upheld his permanent suspension. (*See* D.I. 9 ¶ 6; D.I. 12 at 6) Deitrich subsequently agreed to dismiss his claims against the DELJIS

4

and Defendants, in their individual capacities, alleging that Defendants' handling of Deitrich's DELJIS suspension and subsequent termination violated the Due Process Clause.[13] (*See* D.I. 1) On October 30, 2015, Defendants filed a renewed motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D.I. 11) Deitrich filed an answering brief with respect to each defendant (D.I. 13, 14), and Defendants replied on December 15, 2015 (D.I. 15).

7. Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. A motion to dismiss for lack of subject matter jurisdiction may present either a facial or factual attack. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack "concerns an alleged pleading deficiency," while "a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites." *Id.* (internal quotation marks and alterations omitted). However, where the question of jurisdiction is intertwined with the merits, that is, "where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* at 143 (internal quotation marks and alterations omitted). For jurisdiction to be intertwined with the merits, there must be overlapping issues of proof. *See id.*

8. Defendants contend that the Court lacks subject matter jurisdiction over Deitrich's claims because Deitrich failed to exhaust his remedies under the collective bargaining agreement

---

Defendants. (*See* D.I. 9 ¶ 7; D.I. 10 at 2)

[13]The Complaint also alleged a violation of Deitrich's rights under the collective bargaining agreement between the DOC and Deitrich's union (Count II). (*See* D.I. 1 ¶¶ 45-47) Deitrich plans to dismiss Count II (*see* D.I. 13 at 4 of 17 n.1), so the Court addresses only Count I.

5

between DOC and Deitrich's union ("CBA"). (*See* D.I. 12 at 9-10) In general, there is no exhaustion requirement for § 1983 claims. *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). However, a plaintiff alleging a deprivation of procedural due process "must have taken advantage of the processes that are available to him or her." *Id.* This requirement is "analytically distinct" from "exhaustion requirements that exist in other contexts" and is a "requirement that the harm alleged has occurred." *Id.*; *see also id.* ("Under the jurisprudence, a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies."). Accordingly, whether Deitrich exhausted the remedies available to him goes to the merits of his claim (i.e., whether a procedural due process violation has occurred based on post-termination procedures), and thus the Court will resolve any failure to exhaust as part of Defendant's motion to dismiss pursuant to Rule 12(b)(6). *See CNA*, 535 F.3d at 143.

9. Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). The Court may grant a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000) (internal quotation marks omitted). However, to survive a motion to dismiss, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*,

132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."[14] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

10. Deitrich brings a § 1983 claim, alleging a violation of procedural due process. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). The Fourteenth Amendment forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

11. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." *Alvin*, 227 F.3d at 116. "A state cannot be held to have

---

[14]Plaintiff contends that by attaching a transcript of Deitrich's DELJIS re-hearing, Defendants have presented the Court with material that requires conversion of the motion to dismiss into a motion for summary judgment. (*See* D.I. 13 at 9-10 of 17) The Court disagrees. A court may, without conversion, consider a "document integral to or explicitly relied upon in the complaint" as well as an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (internal quotation marks omitted). While the hearing transcript is "undisputedly authentic" and Deitrich, as an attendee of the hearing, had "actual notice" of the events that took place there, the Court is not relying upon the transcript in deciding this motion.

violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Id.* (internal quotation marks and alterations omitted). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*

12. Here, the CBA establishes a three-step grievance procedure for "dispute[s] between the parties[] concerning the application, meaning or interpretation of" the CBA.[15] (*See* D.I. 12 Ex. C ("CBA") ¶ 6.1) "Appeals from suspensions and dismissals" are initiated at step two of the three-step process, which calls for employees to submit their grievances to the DOC Commissioner (or other designee). (*Id.* ¶ 7.5) Deitrich has not alleged that he filed a grievance after being terminated or took any steps to follow the procedure outlined in the CBA.[16] (*See generally* D.I. 1) While Deitrich contends that this should not be held against him, arguing that grievances must be initiated and prosecuted by the union, not individual members, the CBA specifically provides that "[e]mployees" – not the union or its representatives – "have 5 working days to appeal disciplinary actions." (CBA ¶ 7.6) Indeed, the CBA establishes the procedures that are to occur "[i]n the event the *employee* appeals such suspension or dismissal." (*Id.* ¶ 7.7)

---

[15]The CBA is a "document integral to" and "explicitly relied upon in the complaint," and, therefore, the Court considers it without converting the motion to dismiss into one for summary judgment. *See In re Rockefeller Ctr. Props.*, 184 F.3d at 287.

[16]Deitrich argues that because this fact was not contained in the complaint, consideration of his failure to institute a grievance requires the Court to convert this motion into a motion for summary judgment. (*See* D.I. 13 at 15 of 17) The Court disagrees. It is proper for the Court to consider not only the facts Deitrich alleged in his complaint, but those he failed to, which are necessary to his recovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009) (assessing facts complaint needed to contain to plausibly state claim for relief).

8

(emphasis added) Therefore, under the terms of the CBA, Deitrich himself had the right to file a grievance and has failed to allege that he availed himself of the remedies available under the CBA. Thus, even viewing the facts in the light most favorable to Deitrich, Deitrich failed to take advantage of the remedies available to him under the CBA and cannot sustain a procedural due process claim based on the post-termination procedures. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 176 (3d Cir. 2007) ("[A]ppellants' due process claims against MVM must fail because they failed to take advantage of the grievance process provided to them in the CBA."); *see also Garzella v. Borough of Dunmore*, 280 F. App'x 169, 172-74 (3d Cir. 2008) (affirming grant of "summary judgment on the procedural due process claims on the ground that none of the appellants had exhausted his administrative remedies under the CBA").

13. Deitrich also challenges the sufficiency of the pre-deprivation procedures. When a plaintiff sues under § 1983 based on an alleged deprivation of procedural due process, courts "employ the familiar two-stage analysis, inquiring (1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property'; and (2) whether the procedures available provided the plaintiff with 'due process of law.'" *Alvin*, 227 F.3d at 116 (internal quotation marks and citation omitted).

14. To bring a claim for a violation of the Due Process Clause based on discharge from a job, a claimant must prove he had "property right in continued employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). To have a protectable property interest in a job, a person must have a "legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "In the governmental context, while at-will employment is

9

not generally considered a property interest, employment contracts that contain a 'just cause' provision create a property interest in continued employment." *Wilson*, 475 F.3d at 177 (internal citation omitted).

15. Deitrich alleges that he had a protected property interest in both his DELJIS access and his continued employment with the DOC. (*See* D.I. 1 ¶ 40) He observes he "had worked for DOC for more than 12 years and therefore had a reasonable expectation of continued employment." (D.I. 14 at 8) The CBA contains a "just cause" provision (CBA ¶ 22.1), which, he argues, grants him a protected property interest in his job. Defendants, however, contend that Deitrich lacks a property interest in either his DELJIS access or his job because both require DOC security clearance. (*See* D.I. 12 at 8-9) "[N]o one has a 'right' to a security clearance." *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988). "[E]very court of appeals which has addressed the issue has ruled that a person has no constitutionally protected liberty or property interest in a security clearance or a job requiring a security clearance." *Stehney v. Perry*, 101 F.3d 925, 936 (3d Cir. 1996); *see also Companiony v. Murphy*, 2015 WL 4039866, at *4 (D. Del. July 1, 2015), *aff'd*, 658 F. App'x 118 (3d Cir. 2016) (extending principle to state security clearances because "the grant of a DOC security clearance . . . requires a discretionary act on the part of the granting official or department"). While Deitrich disputes that his job "required" DELJIS access, this is not a reasonable or plausible inference in light of the facts alleged in his complaint. *See Schuylkill Energy Res.*, 113 F.3d at 417 (stating court need not accept "unsupported conclusions and unwarranted inferences"). The complaint alleges five job duties Deitrich was required to perform in his role as a Senior Correctional Counsel, such as writing inmate classification reports and processing phone sheets, that required him to use DELJIS. (*See* D.I. 1 ¶¶ 15-19) Based on

the facts in the complaint, DELJIS access was not merely helpful to performing these tasks, but essential. For example, the complaint states, "Plaintiff *had* to check the inmate's criminal history [on DELJIS] in order to assign the inmate an appropriate classification score." (*Id.* ¶ 16 (emphasis added); *see also id.* ¶¶ 17-19) (describing Deitrich's use of DELJIS to perform other job duties) Indeed, DELJIS access was so important to Deitrich's job that he alleged he had a constitutionally protected property interest in it. (*See* D.I. 1) Given that he could not perform job duties without DELJIS access, Deitrich has failed to demonstrate a protected property interest in either his DELJIS access or his job at DOC, as they both required DOC security clearance.[17] "Without such a protected property interest, plaintiff has no claim for a violation of due process." *Companiony*, 2015 WL 4039866, at *4.

16.  "Some kind of a hearing" is required "prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Loudermill*, 470 U.S. at 542 (internal quotation marks omitted). However, this hearing "need not be elaborate." *Id.* at 545. "Where adequate post-termination procedures are available, an employee is entitled only to 'notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Schmidt v. Creedon*, 639 F.3d 587, 596 (3d Cir. 2011) (citing *Loudermill*, 470 U.S. at 546). Notice of the charges may be either oral or in writing, *Loudermill*, 470 U.S. at 546, and need not be provided to the employee prior to the pre-deprivation hearing, *Schmidt*, 639 F.3d at 597.

17.  Deitrich participated in multiple meetings with Phelps, two interviews with

---

[17]The length of Deitrich's employment and the reasonableness of his expectation of continued employment with DOC do not substitute for the entitlement to continued employment that is necessary to establish a protected property interest. *See Roth*, 408 U.S. at 577.

11

Sammons, and an in-person 210 investigation all prior to the revocation of his DELJIS access and termination. (*See* D.I. 1 ¶¶ 20-21, 24-25, 30, 32-34) Deitrich's interview with Sammons concerned "a Ms. Charlotte Morris," and Deitrich knew – and was interviewed with – the other DOC employees under investigation. (*See id.* ¶¶ 20-21, 23-27) Thus, while Deitrich alleges he never received an explanation of the evidence against him, the complaint reveals that he, in fact, was aware of the subject matter of the DOC investigation and of the other individuals under investigation. Moreover, Deitrich was notified prior to the Pre-Decision Meeting that he was being considered for dismissal based on his "inappropriate and unauthorized use of the Delaware Criminal Justice Information System (DELJIS) for non-work related purposes." (Pre-Termination Letter) Deitrich attended the Pre-Decision Meeting with Hazzard and his union representative and was able to explain why he should not be terminated. (*See* D.I. 1 ¶ 37) Given the multiple interviews, in-person investigation, and meetings Deitrich was involved in prior to the Pre-Decision Meeting, it is unreasonable and unwarranted to infer that Deitrich had no notice of the charges against him and nature of the evidence against him ("inappropriate and unauthorized use of DELJIS" in connection with "Ms. Charlotte Morris"). This was sufficient to allow Deitrich to determine the information he should present in his defense. *See Gniotek v. City of Phila.*, 808 F.2d 241, 244 (3d Cir. 1986) (finding notice standards of *Loudermill* satisfied based on interview where employee was informed, during interview, that he was being questioned "concerning testimony presented in Federal Court under oath by Eugene Boris . . . that he paid you $60 per month for an extended period beginning in 1982 for protection of his illegal activities"). Thus, Deitrich received adequate notice and opportunity to present his side of the story prior to his termination.

IT IS FURTHER ORDERED THAT the parties shall meet and confer and advise the Court, no later than March 23, 2018, whether the Court should close this case.

March 20, 2018
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE